1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

9  | **DONNA FLETCHER,** *et al.*,

10  |        **Plaintiffs,**

11  |        v.

12  | **CITY OF MODESTO,** *et al.*,

13  |        **Defendants.**

14

**1:16-cv-01512-LJO-EPG**

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**(ECF No. 21)**

15

16 | **I. <u>INTRODUCTION</u>**

17 Plaintiffs Donna Fletcher ("Donna"), Nathan Fletcher ("Nathan"), and minor N.F.[1] (collectively,

18 "Plaintiffs") commenced this suit against Defendants City of Modesto ("Modesto"), Tom Fara, Brent

19 Salyer and Does 1-50 (collectively, "Defendants"). ECF No. 1 ("Compl."). The suit arises from the fatal

20 shooting of Christopher Fletcher ("Christopher"), son of Donna and Nathan, and father to N.F., on

21 December 17, 2015 by Modesto Police Department Officers (including Fara, Salyer, and Does 1-25),

22 and alleges that Defendants 1) violated Plaintiffs' Fourth and Fourteenth Amendments under 42 U.S.C.

23

24

25

[1] Donna Fletcher and Nathan Fletcher are the legal guardians of N.F. and will represent N.F.'s interests in this case pursuant to Federal Rule of Civil Procedure 17(c)(1). *See* ECF No. 8.

1  § 1983; 2) are subject to municipal liability; and 3) and are liable under six state law claims. *Id.*

2  Now before the Court is Defendants' motion to dismiss pursuant to Federal Rule[2] of Civil

3  Procedure 12(b)(6). ECF No. 21. Plaintiffs filed their opposition (ECF No. 23) and Defendants replied

4  (ECF No. 24). The matter is suitable for disposition without oral argument. *See* E.D. Cal. L.R. 230(g).

5  For the reasons the follow, the Court GRANTS Defendants' motion in its entirety.

6  ## II. <u>FACTUAL ALLEGATIONS</u>[3]

7  On December 17, 2015, at approximately 2:10 pm, Modesto Police Department Officers Fara,

8  Salyer, and Does 1-25[4], inclusive, ("Officer Defendants") approached Christopher on the 800 block of

9  Tenth Street in Modesto, California. Compl. ¶ 21. Officer Defendants followed Christopher into a

10  parking garage of the Merrill Lynch Building at 801 Tenth Street. *Id.* ¶¶ 22-23. Officer Defendants

11  "allege" that Christopher was holding a firearm when they caught up with him. *Id.* ¶ 24. Christopher

12  never pointed a weapon at Officer Defendants, and "was never an imminent threat to [Officer

13  Defendants]." *Id.* ¶ 25.

14  Officer Defendants detained Christopher in the absence of reasonable suspicion of criminal

15  conduct by him, and "otherwise seized him in an unreasonable manner." *Id.* ¶ 34. Officer Defendants did

16  not have a warrant, reasonable suspicion of criminality, or probable cause to believe that Christopher

17  had committed a crime. *Id.* ¶ 95. The fatal shooting of Christopher by Officer Defendants was done

18  "without reasonable cause to believe that Christopher was an imminent threat" and was done in violation

19  of his right to be free from the use of unreasonable force upon his person under the Fourth Amendment,

20  *id.*¶¶ 28-29, and was done without due process of law, *id.* ¶¶ 44-45. The fatal shooting caused

21

22  [2] All further references to any "Rule" are to the Federal Rules of Civil Procedure.

23  [3] These allegations are drawn from the Complaint, the general truth of which the Court must assume for purposes of a Rule 12(b)(6) motion to dismiss.

24  [4] Does 1-25, inclusive, are sworn peace officers and/or police officers and/or investigators and/or Special Officers and/or dispatchers and/or some other public officers, public officials, or employees of Modesto and/or are otherwise employed by the Modesto Police Department. Compl. ¶ 13. Does 1-25, inclusive, committed some or all of the tortious actions and constitutional violations complained of in this action. *Id.*

25

1   Christopher to incur medical and psychological costs, bills and expenses, funeral and burial expenses,

2   lost wages and profits, *id.* ¶ 86, constituted an assault on Christopher by placing him in unreasonable

3   fear of receiving an imminent violent injury by Officer Defendants, *id.* ¶ 89, and causing him to suffer

4   severe emotional distress, *id.* ¶ 103. The shooting also deprived Plaintiffs of their familial relationship

5   with Christopher guaranteed by the Fourteenth Amendment, *id.* ¶ 39, and caused Plaintiffs to suffer

6   physically, mentally, emotionally and to incur medical and psychological expenses, including funeral

7   and burial expenses, *id.* ¶¶ 62, 67, 80.

8      "[A] final policymaker, acting under color of law, who had final policymaking authority

9   concerning the acts of [Officer Defendants] ratified the individual officer defendants' acts and the basis

10  for them." *Id.* ¶ 51. These policies, procedures, customs, and practices called for the refusal of Modesto

11  and Does 26-50[5], inclusive, to investigate or document complaints of previous incidents of unlawful

12  conduct and to claim that these incidents were justified and proper. *Id.*¶ 15. The polices and customs of

13  Modesto and Does 26-50 have caused Modesto officers to believe that "such conduct is permissible and

14  that such misconduct would not be honestly and properly investigated, all with the foreseeable result that

15  [Modesto]'s officers would engage in violation of civil rights of persons. *Id.* ¶ 54. The training of

16  Modesto police officers was not adequate in preparing them to handle individuals "like and acting like

17  Christopher" in situations that should have been resolved without resorting to the use of deadly force.

18  *Id.*¶ 59. Modesto's hiring procedures were inadequate and "recklessly deliberately indifferent" in failing

19  to screen out applications who were violent, had violent tendencies, and were unlikely to respect the

20  law. *Id.* ¶ 70.

21      Based on these allegations, Plaintiffs seek a jury trial, compensatory damages, punitive damages,

22  and attorney's fees. *Id.* at 27.

23  _____

24  [5] Does 26-50, inclusive, are sworn peace officers and/or the Chief and/or Assistant Chief and/or Commanders and/or
    Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy
25  making officials, employed by the Modesto Police Department and/or Modesto who are "in some substantial way liable and
    responsible for" the occurrences complained of by Plaintiffs in this action. Compl. ¶ 16.

### III. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*,

4

1 | 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

2

### IV. ANALYSIS

To state a claim under § 1983, a plaintiff must allege that the defendant was (1) acting under color of state law at the time the complained-of act was committed; and (2) the defendant's conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Jensen v. Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). "Qualified immunity, however, shields § 1983 defendants '[f]rom liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (alteration in original)). "In determining whether an officer is entitled to qualified immunity, [the Court] consider[s] (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014).

### A.   Fourth Amendment Claims

Plaintiffs' first and second causes of action allege that Officer Defendants violated Christopher's Fourth Amendment rights to be free from the use of unreasonable force and unreasonable seizure when they fatally shot him without reasonable cause to believe that Christopher was an imminent threat or had engaged in criminal conduct. Compl. ¶¶ 28-29, 34-35.

Defendants argue that Plaintiffs have failed to allege that Officer Defendants' use of force was unreasonable and that Defendants' seizure of Christopher was unreasonable because the Complaint does not allege sufficient facts to show that Christopher did not pose a threat of serious bodily injury or death to Officer Defendants. ECF No. 21 at 12-13. "The circumstances of the shooting, based on the allegations in the Complaint, are a complete void." *Id.* at 13. Defendants additionally note that even if Plaintiffs demonstrated a constitutional violation, Plaintiffs would not be able to meet their burden of demonstrating that Officer Defendants are not entitled to qualified immunity. *Id.* at 11.

1        In Plaintiffs' opposition, they assert that the allegation that Officer Defendants shot and killed

2   Christopher because they saw him with a weapon is sufficient to state a violation of Christopher's

3   Fourth Amendment rights.[6] ECF No. 23 at 5-7. Plaintiffs further contend that this allegation

4   demonstrates that Officer Defendants are not entitled to qualified immunity. *Id.* at 7.

5        The Fourth Amendment provides that the "right of the people to be secure in their persons ...

6   against unreasonable searches and seizures, shall not be violated ..." *Heien v. N. Carolina*, 135 S.Ct.

7   530, 536 (2014). The Court analyzes Fourth Amendment claims under the test for "objective

8   reasonableness" set forth by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 397 (1989), which

9   requires a balancing of the intrusion on the individual's Fourth Amendment interests against the

10  countervailing government interests. Specifically, the Court assesses the following factors: 1) the

11  "severity of the intrusion on the individual's Fourth Amendment rights" based on the "type and amount

12  of force inflicted"; 2) the government's interests, including whether the individual "posed an immediate

13  threat to the officers' or public's safety", and whether the individual was resisting arrest or attempting to

14  escape"; and 3) "the gravity of the intrusion on the individual against the government's need for that

15  intrusion." *Espinosa v. City and Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (internal

16  citations omitted). The reasonableness inquiry "requires careful attention to the facts and circumstances

17  of each particular case," and "must be judged from the perspective of a reasonable officer on the scene,

18  rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Furthermore, "[t]he

19  calculation of reasonableness must embody allowance for the fact that police officers are often forced to

20  make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about

21  the amount of force that is necessary in a particular situation." *Id.* at 396-97. "[T]he question is whether

22  the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting

23  them, without regard to their underlying intent or motivation." *Id.* at 397 (quoting *Scott v. United States*,

24  

25  [6] The Court agrees with Defendants that Plaintiffs' citation of Christopher's Second Amendment rights is irrelevant for purposes of this motion.

1    436 U.S. 128, 137-39 (1978)).

2           Whether Plaintiffs have stated a cognizable Fourth Amendment claims against Officer

3    Defendants and whether Officer Defendants are entitled to qualified immunity both depend on whether

4    the Complaint adequately pleads that Christopher did not pose a threat to the safety of Officer

5    Defendants. *See George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (quoting *Bryan v. MacPherson*,

6    630 F.3d 805, 826 (9th Cir. 2010)) ("the 'most important' factor under *Graham* is whether the suspect

7    posed an 'immediate threat to the safety of the officers or others.'"). Here, the only other factual

8    allegation offered in support of Plaintiffs' allegation that Christopher did not pose a threat to Officer

9    Defendants is that Christopher "never pointed a weapon at [Officer Defendants]." *See* Compl. ¶ 25.

10   While this allegation could help lay the factual framework for establishing the liability of Officer

11   Defendants, *see Hayes v. Cnty of San Diego*, 736 F.3d 1223, 1233 (9th Cir. 2013), this one allegation

12   alone is insufficient for the Court to infer that Officer Defendants did in fact violate Christopher's

13   Fourth Amendment rights. *See George*, 736 F.3d at 838 ("If the person is armed—or reasonably

14   suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create

15   an immediate threat [to the officers].". In the absence of further factual allegations, the allegation that

16   Christopher did not pose a threat to Officer Defendants amounts to no more than a "formulaic recitation"

17   of one of the elements necessary to prove that Officer Defendants violated Christopher's Fourth

18   Amendment rights, and is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681; *Medeiros*

19   *v. City and Cnty of Honolulu*, VB No. 11-00221 DAE-RLP,  2011 WL 3566860, at *7 (D. Haw. Aug 12,

20   2011) (granting the defendants' motion to dismiss the plaintiff's unreasonable seizure claim where

21   defendant had a legitimate reason for pursuing decedent and plaintiff had merely alleged that "other less

22   life threatening alternatives were available to the officer which should have been utilized as opposed to

23   and prior to risking/taking the life of [D]ecedent"); *see also Shannon v. County of Sacramento*, No.

24   2:15-cv-00967-KJM-CKD, 2016 WL 1138190, at *5 (E.D. Cal. Mar 23, 2016) (denying the defendants'

25   motion to dismiss the plaintiff's excessive force claim because the plaintiffs alleged sufficient facts

1    about the decedents' interactions with the defendants for the court to make a plausible inference that the

2    decedent did not have enough time to drop his weapons before defendants shot the decedent).

3            Therefore, because the Complaint does not state a cognizable Fourth Amendment claim with

4    regard to either excessive force or unreasonable seizure, the Court GRANTS Defendants' motion to

5    dismiss Plaintiff's first and second causes of action.[7] Dismissal shall be with leave to amend.

6    **B.    Due Process Claims**

7            Plaintiffs' third and fourth causes of action are brought under the Fourteenth Amendment's

8    substantive due process clause. Specifically, Plaintiffs allege that the killing of Christopher by Officer

9    Defendants was "done without the due process of the laws of the United States of America and of the

10   State of California," Compl. ¶¶ 43-47, and deprived them of their familial relationship with Christopher

11   guaranteed by the Fourteenth Amendment, *id*. ¶¶ 38-42.

12           Substantive due process protects individuals from arbitrary deprivation of life and liberty

13   interests by the government. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998); *see also*

14   *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) ("[I]n order to establish a constitutional violation

15   based on substantive due process, [Plaintiffs] must show both a deprivation of [] liberty and conscience

16   shocking behavior by the government."). To be considered arbitrary in a constitutional sense, the

17   conduct at issue must be "only the most egregious official conduct" or "executive abuse of power [that]

18   shocks the conscience," such as conduct "intended to injure in some way unjustifiable by any

19   government interest." *Brittain* , 451 F.3d at 991. In an excessive force case, the Court first determines

20   "whether the circumstances are such that actual deliberation [by the officer] is practical." *Wilkinson v.*

21   *Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (internal citations omitted). "Where actual deliberation is

22   practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Id.* However,

23   "where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct

24   _____

25   [7] For this reason, the Court declines to address the parties' arguments regarding qualified immunity at this time.

8

1    may only be found to shock the conscience if he acts with purpose to harm unrelated to legitimate law

2    enforcement objectives." *Id.* "[T]he heightened purpose-to-harm standard applies where a suspect's

3    evasive actions force the officers to act quickly." *Id.*

4          Defendants acknowledge that Plaintiff's claims are potentially cognizable under the Fourteenth

5    Amendment. ECF No. 21 at 14. Nevertheless, Defendants argue that Plaintiffs have failed "to allege

6    sufficient facts from which the circumstances under which [Christopher] was shot by the Officers can be

7    meaningfully assessed, making it impossible to determine whether the actions of the Officers were even

8    unreasonable under *Graham*, much less whether they 'shock the conscience' as is required for a claim

9    under the Fourteenth Amendment." *Id.* In their opposition, Plaintiffs "submit that executing a man

10   because he may be holding a weapon, even though he presents no threat to the officers or others, shocks

11   the conscience." ECF No. 23 at 7.

12         On these claims, the Court agrees with Defendants. The Court determined, *supra*, that the

13   Complaint does not adequately plead that Officer Defendants acted unreasonably when they shot

14   Christopher. Just as the factual allegations in the Complaint were insufficient for the Court to make a

15   plausible inference that Officer Defendants violated Christopher's Fourth Amendment rights, they are

16   also insufficient for the Court to make the inference that the conduct of Officer Defendants was

17   egregious enough to state a substantive due process violation. There is simply not enough factual content

18   in the Complaint for the Court to evaluate whether to apply the deliberate indifference or purpose-o-

19   harm standard, because it fails to allege how much time had elapsed between the first contact between

20   Officer Defendants and Christopher and when Officer Defendants shot Christopher. *See Porter v.*

21   *Osborn*, 546 F.3d 1131, 1142 (9th Cir. 2008) ("We hold that the purpose to harm standard governs the

22   applicable level of culpability needed to shock the conscience [in a case where the officer] faced a fast-

23   paced, evolving situation presenting competing obligations with insufficient time for the kind of actual

24   deliberation required for deliberate indifference.").

25         For these reasons, Plaintiffs' substantive due process claims are deficient and the Court

1   GRANTS Defendants' motion to dismiss Plaintiffs' third and fourth causes of action. Dismissal shall be

2   with leave to amend.

3   **C.   _Monell_ Claims**

4         In their fifth and sixth causes of action, brought against the City and Does 26-50 ("Municipal

5   Defendants"), Plaintiffs seek to hold Municipal Defendants liable under _Monell v. Dept. of Social_

6   _Services of City of New York_, 436 U.S. 658 (1978).

7         Defendants argue that Plaintiffs' _Monell_ claims must be dismissed because they "contain no

8   factual content." ECF No. 21 at 16. They further point out that a prerequisite to _Monell_ liability "is a

9   finding that _individuals_ engaged in unconstitutional behavior," and that Plaintiffs have not adequately

10  pleaded that the Officer Defendants violated any constitutional rights. _Id._ (citing _City of Los Angeles v._

11  _Heller_, 475 U.S. 796, 799 (1986)).

12        Plaintiffs, again, contend that their allegations are sufficient to allege municipal liability. ECF

13  No. 23 at 7-8. In support of their position, they cite to _Arpin v. Santa Clara Valley Transp. Agency_,

14  which states that "[e]ven if the complaint contains 'nothing more than a bare allegation that the

15  individual [officer's] conduct conformed to official policy, custom, or practice,' dismissal of a 1983

16  complaint alleging municipal liability is improper." 261 F.3d 912, 925 (9th Cir. 2001) (citing _Karim-_

17  _Panahi v. Los Angeles Police Dept._, 839 F.2d 621, 624 (9th Cir. 1988)).

18        Here, the Court agrees with Defendants. As Defendants note in their reply, _Karim-Panahi_ was

19  decided approximately twenty years before the Supreme Court's decisions in _Twombly_ and _Iqbal._ ECF

20  No. 24 at 9. Since then, courts have acknowledged that "the 'bare' pleading standards enunciated in

21  _Karim-Panahi_ is in direct conflict with the pleadings standards announced in _Twombly_ and _Iqbal_, which

22  now governs pleadings generally in federal court." _Id._ at 9-10. The standard in _Karim-Panahi_ is clearly

23  incongruous with Supreme Court precedent and courts in the Ninth Circuit now require plaintiffs to set

24  forth factually supported allegations that "plausibly suggest an entitlement to relief" when pleading

25  _Monell_ claims. _AE ex rel. Hernandez v. Cnty. of Tulare_, 666 F.3d 631, 637 (9th Cir. 2012); _see also_

10

1    *Mateos-Sandoval v. Cnty. of Sonoma*, No. C-11-5817 THE, 942 F. Supp. 2d 890, 898-99, 2013 WL

2    415600, at *4 (N.D. Cal. Jan. 31, 2013) ("*Karim-Panahi* has not been overruled, but the Ninth Circuit

3    has recognized that, under the Supreme Courts' recent pleading jurisprudence, it is no longer clear that,

4    without more, an allegation that an officer's conduct 'conformed to official policy, custom, or practice'

5    continues to be sufficient to state a claim under *Monell*.").

6        In applying the *Twombly*/*Iqbal* standard to the Complaint, it is clear that the Complaint is devoid

7    of facts that support a *Monell* claim. "In order to establish liability for governmental entities under

8    *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which he was

9    deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to

10   the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional

11   violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (*citing Plumeau v. Sch. Dist.*

12   *No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997)). Furthermore, "[f]ailure to train may amount

13   to a policy of 'deliberate indifference' if the need to train was obvious and the failure to do so made a

14   violation of constitutional rights likely." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

15       Plaintiff's fifth cause of action alleges that "a final policy maker, acting under color of law, who

16   had final policymaking authority concerning the acts of [Officer Defendants] ratified the [Officer

17   Defendants'] acts and the basis for them." Comp. ¶ 51. "Upon information and belief, the final

18   policymaker knew of and specifically approved of the [Officer Defendants'] acts." *Id.* These policies,

19   procedures, customs, and practices called for the refusal of Municipal Defendants "to investigate or

20   document complaints of previous incidents of unlawful conduct and furthermore, to officially claim that

21   such incidents were justified and proper." *Id.* ¶ 52. The sixth cause of action alleges that "[t]he training

22   policies of [Modesto] … were not adequate to train its police officers, investigators and other employees

23   to handle the usual and recurring situations with which they must deal with, such as that they confronted

24   when approaching and dealing with person [sic] like and acting like Christopher … a situation that could

25   have and should have been resolved without resorting to the use of deadly force on Christopher. *Id.* ¶ 59.

1       These allegations are conclusory, factually unsupported, and do not plausibly suggest an

2   entitlement to relief. *See Moland v. City of Ceres*, 1:16-cv-01073-LJO-SKO, 2016 WL 6094830, at *5

3   (E.D. Cal. Oct. 18, 2016) ("A conclusory allegation regarding the existence of a policy or custom

4   unsupported by factual allegations is insufficient to state a *Monell* claim."). Furthermore, as a threshold

5   matter, and as discussed above, the Complaint does not even adequately plead that Officer Defendants

6   committed a constitutional violation that would serve as the foundation for a *Monell* claim. This alone is

7   reason enough to dismiss Plaintiffs' *Monell* claims. *City of Los Angeles v. Heller*, 475 U.S. 796, 799

8   (1986) ("Neither [*Monell*], nor any other of our cases authorizes the award of damages against a

9   municipal corporation based on the actions of one of its officers when in fact the jury has concluded that

10   the officer inflicted no constitutional  harm."). Therefore, the Court GRANTS Defendants' motion to

11   dismiss Plaintiffs' fifth and sixth causes of action. Dismissal shall be with leave to amend.

12   **D.**   **State Law Claims**

13       Plaintiffs have also asserted seven claims under California law: wrongful death (Comp. ¶¶ 64-

14   68); negligence (*id.* ¶¶ 69-76); survivorship (*id.* ¶¶ 77-82); battery (*id.* ¶¶ 83-87); assault (*id.* ¶¶ 88-92);

15   false arrest (*id.* ¶¶ 93-99); and intentional infliction of emotional distress (*id.* ¶¶ 100-106). However,

16   pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction

17   over remaining state law claims if it has dismissed all claims over which it has original jurisdiction.

18   Here, because the Court has found that dismissal of Plaintiffs' six § 1983 claims is proper under Rule

19   12(b)(6), the Court declines to exercise supplemental jurisdiction over the remaining state law claims

20   and will not address them at this time. *See* 28 U.S.C. § 1367(c)(3); *Notrica v. Bd. of Supervisors of Cnty.*

21   *of San Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991).

22   //

23   //

24   //

25   //

## V. CONCLUSION AND ORDERS

For the reasons stated above:

1) Defendants' motion to dismiss (ECF No. 21) is GRANTED IN ITS ENTIRETY and Plaintiffs' first, second, third, fourth, and fifth causes of action are DISMISSED with leave to amend.

2) The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state law claims at this time.

Plaintiffs shall have twenty days from electronic service of this Order to file an amended complaint.


IT IS SO ORDERED.

Dated:   **February 15, 2017**                 **/s/ Lawrence J. O'Neill**
                                                UNITED STATES CHIEF DISTRICT JUDGE